IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SHERRI D. REYNOLDS,

      Plaintiff,

v.                                          Case No. 25-2423-JWB

UNITED PARCEL SERVICE, INC.,

      Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to dismiss. (Doc. 7.) The motion is fully briefed and ripe for decision. (Docs. 8, 12, 15.) The motion is DENIED for the reasons stated herein.

**I.**    **Facts**

Sherri D. Reynolds ("Plaintiff") is a former employee of United Parcel Service, Inc. ("UPS" or "Defendant") and worked as a preload charge supervisor in Kansas City, Kansas. (Doc. 1 ¶¶ 1, 14.) Plaintiff is a Caucasian female born in 1964. (*Id*. ¶ 15.) Plaintiff was employed by Defendant from July 9, 2018, to August 23, 2024. (*Id*. ¶ 1.) Plaintiff alleges age and sex discrimination, hostile work environment, retaliation, and constructive discharge, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq*. ("ADEA"). (*Id*. ¶¶ 4, 17, 34–45, 46–56.) Plaintiff exhausted all applicable administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 13, 2024, and receiving a notice of right to sue on May 22, 2025. (*Id*. ¶¶ 8, 10.) The following facts are taken from the complaint and serve as the basis for Plaintiff's claims.

1

Plaintiff alleges she was one of the only females in her supervisor position and the oldest supervisor by "20 or more years." (*Id*. ¶ 18.) The discriminatory treatment occurred on an almost daily basis in the form of ridicule, ageist and sexist comments, assignment of physical tasks, and sexual harassment. (*Id*. ¶ 19.) In August 2023, Plaintiff overheard her supervisor, Karen Martin, report to another supervisor that they needed to do whatever it took to make Plaintiff quit. (*Id*. ¶ 20.) Plaintiff routinely reported the harassment and discrimination to her supervisors and co-workers. (*Id*. ¶ 22.) Other employees observed this treatment and also believed that Plaintiff was being discriminated against.

In 2024, Plaintiff alleges that Mike Bayers became one of Plaintiff's primary supervisors. (*Id*. ¶ 23.) On several occasions, Mike Bayers picked on Plaintiff and screamed at her in front of other employees, which Plaintiff understood to be targeting her on the basis of her age and sex. (*Id*. ¶ 24.) These displays of hostility and ridicule encouraged other employees to harass and ridicule Plaintiff on an almost daily basis, to the point she frequently retreated to her car and broke down into tears. (*Id*. ¶ 25.) In her EEOC complaint, Plaintiff asserts that she was subjected to ridicule by both Bayers and Martin and that they both allowed others to ridicule Plaintiff due to her age and sex. (*Id.* at p. 13.) Defendant also allegedly reduced Plaintiff's hours and assigned her to undesirable work and unsafe tasks in an effort to induce her to resign. (*Id*. ¶ 26.) Plaintiff was discouraged by an unnamed supervisor from applying for a full-time supervisor position due to her age and sex. (*Id*. ¶ 27.) Defendant also "refused to consider [Plaintiff] for the position due to her age and sex." (*Id.*)

In August 2024, Plaintiff reported her complaints about the discrimination and harassment to Kelly Cessay, plant manager, and Chelonda Barrett, one of her supervisors, and asked them how to get in touch with Human Resources ("HR"). (*Id*. ¶ 29.) Plaintiff eventually obtained

information about making a report to HR and did so in August 2024. (*Id*. ¶ 30.) After receiving her report, Plaintiff alleges that Defendant's HR representatives told Plaintiff that it would not address these concerns. (*Id*. ¶ 31.) Instead, Defendant retaliated against Plaintiff after receiving these protected reports—culminating in her discharge a few weeks later on August 23, 2024. (*Id*. ¶¶ 32, 33.) According to Plaintiff, after making the complaints, she was assigned to excessive work and a reduction of hours. Other younger, male employees were not treated similarly. (Doc. 1 at 13.) Following exhaustion of her administrative remedies, the instant action commenced.

**II.    Standard**

To defeat a motion to dismiss, a complaint must contain enough facts to state a claim of relief that is plausible on its face to withstand a Rule 12(b)(6) motion to dismiss. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). At the motion-to-dismiss stage, a reviewing judge accepts all well-pleaded allegations in the complaint as true. *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 700 (10th Cir. 2014). The reviewing judge also views all well-pleaded facts, and the reasonable inferences derived therefrom in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

Rule 12(b)(6) "does not require that Plaintiff establish a prima facie case in [her] complaint, but rather requires only that the Plaintiff allege enough factual allegations in the complaint to set forth a plausible claim." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1171–72 (10th Cir. 2015) (internal citations omitted). In the end, the issue is not whether Plaintiff will ultimately

prevail, but whether Plaintiff is entitled to offer evidence to support her claims. *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

**III.    Analysis**

Plaintiff alleges four Title VII claims based on sex discrimination, including (1) hostile work environment, (2) retaliation, (3) disparate treatment, and (4) constructive discharge. (Doc. 1 ¶¶ 34–45.) Plaintiff also alleges three ADEA claims based on age discrimination, including (1) hostile work environment, (2) retaliation, and (3) constructive discharge. (*Id*. at 46–56.) The court will address these claims in turn.

**A.    Sex Discrimination and Hostile Work Environment**

Plaintiff has alleged a claim of sex discrimination including hostile work environment and disparate treatment. (*Id*. ¶¶ 34–45.) Defendant argues that Plaintiff's sex discrimination and hostile work environment claim ought to be dismissed because Plaintiff has failed to state a claim. (Doc. 8.)

Title VII prohibits a hostile or abusive work environment predicated on a person's sex. *See Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005). To prove a prima facie case of discrimination under Title VII, Plaintiff must establish that: (1) Plaintiff suffered an adverse employment action, and (2) the circumstances surrounding the adverse employment action give rise to an inference of discrimination on the basis of her race. *See Ford v. Jackson Nat'l Life Ins. Co*., 45 F.4th 1202, 1215 (10th Cir. 2022).[1] Sex discrimination can also form the basis of a hostile work environment claim if (1) Defendant discriminated against her on the basis of sex and (2) the

---

[1] Courts often include a third element: that the plaintiff belongs to a protected class. However, that element can be misleading. Title VII does not limit its protections to disfavored groups or classes of people. *See* 42 U.S.C. § 2000e-2(a). Rather, it prohibits certain categories of discrimination, such as discrimination on the basis of race or sex. *See id*.; *see, e.g. Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 78 (1998) ("Title VII's prohibition of discrimination 'because of...sex' protects men as well as women.")

4

discrimination was sufficiently severe or pervasive that it altered the terms or conditions of her employment. *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021).[2] "[T]he alteration to a term or condition of employment is itself the hostile work environment." *King v. Koch AG & Energy Sols.*, LLC, No. CV 25-1017-KHV, 2025 WL 2106828, at *5 (D. Kan. July 28, 2025) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). A hostile work environment claim is "composed of a series of separate acts that collectively constitute one unlawful employment practice." *Morgan*, 536 U.S. at 117. "An employer creates a hostile work environment when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Iweha v. State of Kan.*, 121 F.4th 1208, 1221 (10th Cir. 2024). Whether a hostile work environment exists "depends not only on the number of incidents, but also on the severity of the incidents." *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1143 (10th Cir. 2008).

In determining whether a work environment is sufficiently hostile under Title VII, courts look to the totality of the circumstances and consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "Isolated incidents of discriminatory conduct and 'run-of-the mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces' are

---

[2] As Plaintiff points out, the United States Supreme Court recently decided *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346 (2024). In that case, the Court held that when plaintiffs bring suit under Title VII's discrimination prong, they need not show that harm was sufficiently severe or pervasive or "any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar," and instead, plaintiffs need only show "some harm" or "some disadvantageous change." *Id.* at 355. Contrary to Plaintiff's assertion, the Tenth Circuit has not analyzed the scope of *Muldrow* and whether it alters the elements of hostile work environment claims under Title VII. Nevertheless, in the current matter, the court holds that Plaintiff's allegations rise to the level of "sufficiently severe or pervasive." *See Throupe*, at 1251. Thus, by definition, Plaintiff's pleadings would also satisfy the lower pleading standard identified in *Muldrow* that is potentially applicable to Title VII hostile work environment claims.

insufficient to support a claim for hostile work environment." *King*, 2025 WL 2106828, at *6 (citing *Throupe*, 988 F.3d at 1252).

Finally, and specific to Title VII disparate-treatment claims, Plaintiff must also allege she suffered an adverse employment action. *Throupe*, 988 F.3d at 1252. This includes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id*. (internal quotation and citation omitted).

Here, Plaintiff alleges she was "one of the only females" who worked in her position as a supervisor and typically performed work that was done by "younger workers, who were primarily men." (Doc. 1 ¶¶ 18, 39.) She alleges she experienced discrimination that occurred "on an almost daily basis in the form of ridicule, ageist and sexist comments, assignment of physical tasks, and age-related harassment and sexual harassment." (*Id*. ¶ 19.) These allegations, accepted as true, are sufficient to raise an inference that the harassment was sex-based. Defendant argues that Plaintiff fails to allege facts showing she was subjected to conduct because of her sex, noting that three of the four individuals named in the complaint are women (Kelly Cessay, Chelonda Barrett, and Karen Martin). (Doc. 8 at 6.) This argument is unpersuasive as same-sex harassment can support a hostile work environment and sex discrimination claim under Title VII. *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 79–80 (1998).

Defendant further contends the allegations are conclusory and lack specificity regarding who made discriminatory comments, when they occurred, and what was said. (Doc. 8 at 2, 4–5.) This presents a closer call. On one hand, Plaintiff specifically alleges that Mike Bayers, Plaintiff's supervisor at UPS, "picked on Plaintiff and screamed at Plaintiff in front of other employees," on multiple occasions while at work at her Kansas City location, in a way that Plaintiff understood to

6

be targeting her on the basis of her age and sex. (Doc. 1 ¶ 24.) On the other hand, a lot of Plaintiff's other allegations are cast in more general terms, without identifying specific individuals. While such allegations might border on conclusory, the seriousness of other allegations in the complaint convinces the court that the proper course is to allow the parties to explore and develop the factual basis underlying these claims through discovery.

As to severity and pervasiveness, Plaintiff alleges the harassment occurred "on an almost daily basis" throughout her employment. (*Id.* ¶ 19.) She alleges that in August 2023, her supervisor Karen Martin told another supervisor "that they needed to do whatever it took to make Plaintiff quit." (*Id.* ¶ 20.) Afterward, Defendant reduced her hours and assigned her to "undesirable work and unsafe tasks" in an effort that Plaintiff believes was meant to get her to resign. (*Id.* ¶ 26.) Plaintiff was discouraged from applying for a promotion due to her sex and Defendant "refused to consider her for the position due to her age and sex." (*Id.* ¶ 27.) Such allegations, presumed true, are sufficiently severe and pervasive as they exhibit a pattern of sex-based harassment that altered the terms and conditions of her employment. *Mathews v. Butler Cmty. Coll.*, No. 17-1175-EFM, 2019 WL 4450669, at *7 (D. Kan. Sept. 17, 2019) ("[L]egally intolerable working conditions include pervasive or severe criticism, ultimatum-like proposals to quit, work-defeating interference, and undermining an employee's work."). Accordingly, Plaintiff has pled facts sufficient to state a claim for sex discrimination through hostile work environment and disparate treatment. Therefore, Defendant's motion to dismiss these claims is denied.

### B.  Age Discrimination and Hostile Work Environment

Plaintiff has also alleged a claim of age discrimination including hostile work environment. (Doc. 1 ¶¶ 46–56.) Defendant argues that Plaintiff's age discrimination and hostile work environment claim ought to be dismissed because Plaintiff has failed to state a claim. (Doc. 8.)

7

To state a claim of age discrimination, Plaintiff must show: (1) she is a member of the class protected by the ADEA; (2) she suffered an adverse employment action; and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination. *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015) (citing *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)). Furthermore, under the ADEA, age must be the "but-for" cause of the adverse treatment at issue. *See Babb v. Wilkie*, 140 S. Ct. 1168, 1174 (2020). Age discrimination can also form the basis of a hostile work environment claim if "(1) the employee was discriminated against because of her age; and (2) the discrimination created a workplace so permeated with severe or pervasive intimidation, ridicule, and insult, that it altered the employment conditions and created an abusive working environment." *Howell v. New Mexico Dep't of Aging & Long Term Servs.*, 398 F. App'x 355, 359 (10th Cir. 2010) (citing *MacKenzie v. City & Cnty. Of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005)).

Here, Plaintiff alleges she experienced pervasive age discrimination and that the "discrimination occurred on an almost daily basis" by way of humiliating ridicule, ageist and sexist comments. (*Id*. ¶¶ 17, 19.) She alleges that Mike Bayers subjected her to degrading insults on account of her age and discouraged her from applying for a promotion "due to her age." (*Id*. ¶ 27.) As with the sex discrimination claim, Defendant's demand for greater factual specificity conflates pleading requirements with evidentiary proof. The Tenth Circuit has recognized "[i]t is well-established that 'we do not mandate the pleading of any specific facts in particular' to survive a motion to dismiss a . . . discrimination claim. *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1141 (10th Cir. 2024). And the complaint need only "give the defendant fair notice of what the plaintiff's claims is." *Swierkiewicz v. Sorema N. A*., 534 U.S. 506, 508, 512 (2002). Plaintiff has alleged a pattern of age-based harassment and discrimination throughout her employment that

is severe and pervasive enough to adequately give rise to an inference of unlawful discrimination," and put Defendant on "fair notice" of the claims against it. In conclusion, Plaintiff has pled facts sufficient to state a claim for age discrimination and hostile work environment. Therefore, Defendant's motion to dismiss these claims is denied.

### C. Retaliation

Plaintiff has also alleged claims of retaliation brought under Title VII and the ADEA. (Doc. 1 ¶¶ 8, 29, 33, 41, 52.) Defendant argues that Plaintiff's retaliation claims ought to be dismissed because Plaintiff has failed to state a claim. (Doc. 8.)

The elements of a retaliation claim under Title VII require Plaintiff to show: "(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021); *see also MacKenzie*, 414 F.3d at 1278-79, *abrogated on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018) (listing nearly identical elements for a retaliation claim under the ADEA). Protected activity for purposes of a retaliation claim includes complaining about age or sex discrimination made illegal under Title VII or the ADEA. *Iweha*, 121 F.4th at 1233.

Here, Plaintiff alleges making multiple complaints—a protected activity. Specifically, Plaintiff alleges she engaged in "routinely report[ing] the harassment and discrimination that she endured to her supervisors and co-workers." (Doc. 1 ¶ 22.) For example, "[i]n August 2024, Plaintiff . . . took legally protected action and reported her complaints about the discrimination, retaliation, and harassment . . . to Kelly Cessay, Plant Manager, and Chelonda Barrett, one of her supervisors, and asked them how to get in touch with the appropriate people at Human Resources."

9

(*Id.* ¶ 29.) Upon learning of the proper reporting channels, she did make such a report in August 2024. (*Id.* ¶ 30.) These allegations establish that Plaintiff engaged in protected activity by complaining about age and sex discrimination.

Defendant argues that Plaintiff has failed to allege a causal connection between her protected activity and her materially adverse employment action, asserting that temporal proximity alone is insufficient. (Doc. 15 at 3-4.) The court finds this argument unpersuasive. Plaintiff alleges she suffered materially adverse actions following her making complaints. To wit, she alleges that "[a]fter receiving Plaintiff's protected reports and complaints, Defendant did nothing to address [them], and Defendant's Human Resources representatives reported to Plaintiff that it could not or would not address these concerns." (*Id.* ¶ 31.) Eventually, Plaintiff alleges she was constructively discharged on August 23, 2024, less than a month after making these reports to HR. (*Id.* ¶ 33.) Close temporal proximity between a protected activity and an adverse employment action can establish a causal connection if it "'is very closely connected in time.'" *See Metzger v. City of Leawood*, 144 F. Supp. 2d 1225, 1232 (D. Kan. 2001) ("Constructive discharge can support a retaliation claim, particularly if the actions leading to the constructive discharge are close in time to the protected opposition to Title VII violations."). Here, Plaintiff has alleged that she complained of discrimination in August 2024, that Defendant failed to address her concerns, that the incidents of retaliation and harassment escalated, and that she was constructively discharged later that *same* month. The court finds Plaintiff properly alleged a causal connection between the protected activity and the materially adverse action. Thus, Plaintiff has pled facts sufficient to state a claim for retaliation. Therefore, Defendant's motion to dismiss these claims is denied.

D. Constructive Discharge

Finally, while Plaintiff ties her constructive discharge allegations to her Title VII and ADEA claims, she has also alleged a distinct or "stand alone" claim of constructive discharge. (Doc. 1 ¶¶ 33, 41, 52; *see also* Doc. 12 at 11–13.)  Again, Defendant argues that Plaintiff's constructive discharge claims ought to be dismissed because Plaintiff has failed to state a claim. (Doc. 8.)

"A claim of constructive discharge has two basic elements: First that the plaintiff was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign. Second, that he actually resigned." *Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 761 (10th Cir. 2020) (ellipses, brackets, and internal quotation marks omitted); *see also Neri v. Bsd. of Educ.*, 860 F. App'x 556, 567 (10th Cir. 2021).  If Plaintiff demonstrates constructive discharge, "we treat the employee's resignation as though the employer actually fired him." *Green v. Brennan*, 578 U.S. 547, 560 (2016).  The employment conditions must be objectively intolerable; accordingly, Plaintiff's subjective views of the situation are irrelevant. *See Derr v. Gulf Oil Corp.*, 796 F.2d 340, 342–43 (10th Cir. 1986).  Whether Plaintiff was constructively discharged is "usually a question of fact." *See Isberner v. Walmart Inc.*, No. 20-2001-JAR-KGG, 2021 WL 4284540, at *18 (D. Kan. Sept. 21, 2021) (citing *Heutzenroeder v. Mesa Cnty. Valley Sch. Dist.* 51, 391 F. App'x 688, 693 (10th Cir. 2010)).

Here, Plaintiff alleges a culmination of events that rendered her working conditions objectively intolerable.  She alleges she experienced "pervasive age and sex/gender discrimination that created a hostile workplace for her" and that occurred almost every day. (Doc. 1 ¶¶ 17, 19.)  She further alleges supervisors stating they would take actions to make Plaintiff quit, she was screamed at in front of other employees causing them to make disparaging comments towards her, remarks were made to her in employment settings that were "humiliating and degrading," and that

11

as a result "Plaintiff often had to go to her parked vehicle to cry." (*Id*. ¶¶ 17–21, 24–26.) Eventually, Plaintiff alleges that she reported these actions and her reports were ignored. Instead, the aggressive and sexually harassing remarks only escalated, leading to her constructive discharge on August 23, 2024.

These allegations, taken together, describe working conditions that escalated to the point where a reasonable person in Plaintiff's position would feel compelled to resign. Plaintiff has alleged "pervasive or severe criticism," coupled with Defendants refusal to address her complaints, that amount to being objectively intolerable. *See Mathews*, 2019 WL 4450669 at *7 ("[U]ndesirable working conditions become legally intolerable once those conditions leave an employee that seeks relief no other reasonable choice but to quit."). In conclusion, Plaintiff has pled facts sufficient to state a claim for constructive discharge. Therefore, Defendant's motion to dismiss these claims is denied.

**IV.   Conclusion**

THEREFORE, Defendant's Motion to Dismiss (Doc. 7.) is DENIED.

IT IS SO ORDERED. Dated this 28th day of October, 2025.

                                            s/ John W. Broomes
                                            JOHN W. BROOMES
                                            CHIEF UNITED STATES DISTRICT JUDGE